UNITED STATES of America

v.

Keith S. CARSWELL, Appellant.

No. 89–3188.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1990.

Decided Jan. 15, 1991.

Gregory Bruce English, Alexandria, Va., appointed by this Court, for appellant.

Kirby D. Behre, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman, and Patricia Z. Stewart, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and D.H. GINSBURG, and RANDOLPH, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Defendant Keith Carswell appeals his conviction for possession of cocaine base with intent to distribute and use of a firearm during a drug trafficking crime. He asserts several grounds for reversal, but only the district court's rejection of the defendant's expert witness merits a published opinion on appeal. Because we conclude that the district court did not abuse its discretion in excluding the would-be expert's testimony, we affirm the conviction.

## I. BACKGROUND

After a search of Carswell's apartment uncovered fourteen plastic bags containing a total of 2.926 grams of cocaine base, he was charged with possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). At trial, the defendant admitted he possessed the drugs, but testified that he was an addict, and that the drugs were for his personal consumption.

Detective Charles DiDomenico, an officer assigned to the Narcotics Branch of the Metropolitan Police Department, testified that in his opinion the packaging of the cocaine was more consistent with an intent to distribute than an intent to consume. Specifically, the officer opined that a single user would not purchase for consumption the quantity of cocaine found at Carswell's apartment, and that in any event he would not purchase that quantity in 14 separate bags. On cross-examination, DiDomenico acknowledged that he did not know the maximum amount of cocaine that a person could smoke without dying.

In his case-in-chief, Carswell sought to introduce Mr. Jon Gettman as an expert on drug abuse. According to the defendant's proffer, Gettman would have testified that the amount of cocaine and the type of packaging found in Carswell's apartment are consistent with personal use, and that some persons could consume as much as seven grams of cocaine at one time without dying. Gettman would also have testified that cocaine addiction can result in weight loss and erratic work performance, both of which Carswell had claimed, in his own testimony, to have experienced. The district court, however, concluded that Gettman was not qualified to testify as to these matters, and excluded his testimony.

On appeal, Carswell points to several facts in support of Gettman's expertise on the subject of drug abuse. At the time of trial, Gettman was the publisher of a newsletter on marijuana; previously he had served as the national director of the National Organization for the Reform of Marijuana Laws (NORML), a purpose of which, according to Gettman, is to educate the public about marijuana. He had also worked eight years, ending in 1980, in a District of Columbia store that sold drug paraphernalia to both marijuana and cocaine users. Gettman had testified twice as an expert on drug abuse in the United States District Court for the Eastern District of Virginia, testified before the Alaska State Senate on a marijuana bill, and spoken at various seminars and conferences on drug abuse.

## II. ANALYSIS

■ Whether a witness is qualified as an expert in a particular area is largely committed to the discretion of the trial court. *Beins v. United States*, 695 F.2d 591, 609 (D.C.Cir.1982). The principle guiding that discretion is Federal Evidence Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ Carswell asserts two bases for Gettman's expertise: his work at NORML during the 1980s, and his work in the 1970s at the paraphernalia store. Neither position, however, was linked closely enough to the issues of cocaine use raised by the defense to enable us to conclude that the district court abused its discretion in excluding Gettman's testimony.

On voir dire, Gettman stated that he was familiar with the quantities in which cocaine is presently sold in the District of Columbia. He did not, however, recognize either of two street terms for such quantities. When asked the source of his information about how cocaine base sales are conducted, he answered:

> As part of my job at NORML, it was my responsibility to be current on drug abuse issues before the public, as I frequently would have to debate the issue of the harmfulness of marijuana versus the harmfulness of cocaine or, for that matter, describe how there are differences between the dynamics of marijuana sales and the dynamics of cocaine sales.

It is unclear, however, why these issues would entail knowledge concerning the packaging and distribution practices of cocaine dealers in the District.

In addition, Gettman's failure to recognize the street terms for the quantities in which cocaine is sold tends to undercut his claim to detailed knowledge in this area. Gettman's casual encounters with customers in a paraphernalia store, ending over a decade ago, are particularly weak support for a claim of expertise on the subject of the current practices of cocaine sellers or users.

■ One of the questions that Carswell proposed to ask Gettman involved the amount of cocaine a person can consume at one time. Gettman had no training in pharmacology or any other relevant discipline, however. While an expert need not necessarily have particular academic credentials, *e.g., Hammond v. International Harvester Co.*, 691 F.2d 646, 653 (3d Cir.1982), most cases upholding a trial court's decision to qualify an expert on the basis of practical experience have involved knowledge gained in something more than a casual manner, or knowledge upon which the witness or others relied in a context independent of the courtroom. For example, in *Davis v. United States*, 865 F.2d 164 (8th Cir.1988), a witness without academic training had testified regarding the likelihood of transmitting venereal disease; the court of appeals upheld admission of the testimony because the witness was a public health investigator. Similarly, in *Hammond*, an expert without design credentials testified as to a design defect in a tractor; he had not only sold automotive and mechanical agricultural equipment, but had also taught automobile repair and maintenance. 691 F.2d at 653.

In *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir.1979), buyers for department stores had testified regarding the sophistication of the typical retail purchaser of a particular type of coat. In the course of discussing the district court's admission and consideration of this testimony, the Second Circuit concluded that "[i]t was certainly not error for the district court to credit and rely on the … testimony of witnesses whose professional performance must depend in large part on the accuracy of [the opinions they expressed]." 599 F.2d at 1138 n. 7. *See also United States v. Jackson*, 425 F.2d 574, 577 (D.C. Cir.1970) (trial court did not abuse its discretion in qualifying as an expert on pickpocket techniques an experienced police of-

ficer who had worked full-time for three years on the pickpocket squad, investigating fifty pickpocket cases and observing five such thefts). We note that in the cases the defendant cites regarding expert qualification, the witness appears to have acquired the claimed expertise not casually but purposefully in connection with his or her vocation. *See United States v. Sellaro*, 514 F.2d 114 (8th Cir.1973) (upholding admission of testimony on bookmaking methods where witness was an FBI agent who had attended three FBI courses on the topic and had worked for eight years as a gambling agent for FBI); *United States v. Luschen*, 614 F.2d 1164 (8th Cir.1980) (upholding admission of testimony by a public health chemist as to whether a particular chemical test was accurate).

We do not suggest that only expertise acquired for professional purposes may be recognized under Rule 702. Rather, the point is that the way in which the witness acquired the experience he claims as the basis of his expertise is significant in assessing whether he is likely to have acquired accurate and reliable knowledge. The knowledge that Gettman claims to have acquired was at most incidental to his employments. In essence, he is claiming to have been an observant person who was employed in activities that might have enabled a keen observer to learn something about the subjects at issue in this case. That is too casual a basis for this court to say, as a matter of law, that Gettman is "qualified as an expert by knowledge," within the meaning of Rule 702.

In the end, then, our resolution of this issue turns upon the standard of review. Certainly, we do not suggest that the trial court would have abused its discretion had it admitted Gettman's testimony. Gettman's experiences probably gave him at least somewhat greater knowledge of cocaine abuse, and perhaps of cocaine sales practices, than that of the average juror. Nevertheless, under Rule 403, a district court may reasonably conclude that something more than that, some threshold level of expertise, is necessary in order to justify devoting trial time to, and incurring other costs involved in, admitting relevant evidence. *See United States v. Anderson*, 851 F.2d 384, 394 (D.C.Cir.1988) (recognizing district court's broad discretion in balancing the probative value of expert testimony against its prejudicial effect); *United States v. Downing*, 753 F.2d 1224, 1226 (3d Cir.1985) (district court has discretionary authority under Rule 403 to exclude relevant evidence that would unduly waste time or confuse issues at trial). In particular, if a witness' expertise on a subject appears to be attenuated or questionable, then the trial court may conclude that the danger of prejudice merely from labelling him an "expert" outweighs the possibility that his testimony would be helpful. *See United States v. Doe*, 903 F.2d 16, 19–20 (D.C.Cir.1990) (inherent danger of expert testimony unduly biasing jury because of its "aura of special reliability").

### III. Conclusion

We conclude that any expertise on cocaine abuse or sales practices Gettman may have had was not so manifest that the district court abused its discretion in excluding his testimony. Accordingly, the convictions are

*Affirmed.*