COMMONWEALTH vs. DARIO PEREZ.

Suffolk. May 1, 1989. — July 10, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Sequestration of witnesses, Presence of police witness
at prosecutor's table, Judicial discretion, Mistrial.

At a criminal trial, no substantial risk of a miscarriage of justice, by reason
of the Commonwealth's alleged improper endorsement of a testifying
police officer's credibility, was occasioned by the officer's sitting at
counsel table with the prosecutor, with the judge's permission, through-
out the trial, where the judge had impliedly found the officer to be
essential to the management of the case by exempting him from a seques-
tration order and where the judge questioned the prospective venire
regarding whether the fact that a witness was a police officer would
influence their assessment of the witness's credibility. [342-344]
The judge at a criminal trial did not err in denying the defendant's motion
for a mistrial on the ground that a police officer being cross-examined
by the defendant had referred to the defendant's photograph as a "mug
shot," where the context of the questioning and the type of questions
being posed risked eliciting that very type of response. [344-345]

INDICTMENTS found and returned in the Superior Court De-
partment on August 15, 1986.

The cases were tried before *Elizabeth J. Dolan*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Woodrow Brown, Jr.*, for the defendant.

*Susan Underwood*, Assistant District Attorney, for the Com-
monwealth.

LYNCH, J. On January 20, 1987, a jury convicted the defend-
ant, Dario Perez, on two indictments charging possession of
cocaine with the intent to distribute, and on one indictment
charging unlawful distribution of cocaine. The defendant was
sentenced to a term of from six to eight years on each convic-
tion, all to be served concurrently. The defendant appealed,
and we transferred the matter here on our own motion.

In challenging his convictions, the defendant argues that a substantial risk of a miscarriage of justice was created when a police officer, who was also a prosecution witness, sat at counsel table with the prosecutor throughout the trial. The defendant also argues that it was error for the judge to deny his motion for a mistrial based upon a witness's reference to a black and white photograph of the defendant as a "mug shot." We reject each of the defendant's arguments and affirm the convictions.

The following is as much of the facts and evidence as is necessary to understand the defendant's claims. On two occasions in April, 1986, the defendant sold cocaine to Shirley Garrity (Garrity), an undercover State trooper who was participating in an ongoing investigation of suspected drug dealers in the Chelsea area. Before making the undercover narcotics buys from the defendant, Garrity met with John R. Phillips (Phillips), a Chelsea police officer, to discuss the investigation. Part of this discussion included Phillips showing Garrity photographs of suspected drug dealers, including the defendant. After each undercover narcotics buy Garrity met with Phillips and identified the defendant from a photographic array as the person from whom she purchased the cocaine.

On July 18, 1986, the police executed a search warrant at the defendant's apartment, but found no contraband. However, while the police were conducting their search, Officer Phillips who supervised the undercover narcotics buys, saw the defendant approach the building carrying a small paper bag. Before entering the building the defendant spoke to an elderly woman who was sitting on the front steps and then went into a basement area underneath the front stairs. The defendant emerged without the bag. Phillips then arrested the defendant and, upon searching beneath the stairs, found a paper bag which contained twenty-five packets of cocaine.

At trial Garrity testified regarding her purchases of cocaine from the defendant and her identification of the defendant from the photographs shown to her by Phillips. Phillips corroborated the trooper's testimony regarding her identification of the defendant after each undercover narcotics buy. Phillips also tes-

tified regarding his role in the execution of the search warrant at the defendant's apartment, including the seizure of the cocaine from the stairwell area.

The prosecutor questioned both Garrity and Phillips about the occasions when the officer showed the trooper the defendant's photograph and about Garrity's subsequent selection of the defendant's photograph as a photograph of the person who sold her the cocaine. During cross-examination, the defendant questioned Garrity regarding the number of photographs of the defendant she had seen. When she testified that she had seen "[t]wo — the same picture, the side and the front," the defendant moved for a mistrial, arguing that Garrity's description indicated that the photographs were mug shots. The judge denied the motion, ruling that Garrity's description of the photographs was not prejudicial.[1] During his cross-examination of Phillips, the defendant also posed questions about the photographs shown to Garrity. In response to the defendant's question whether the photographs were black and white, the officer answered, "I believe one was a mug shot; yes." It is the denial of the defendant's second motion for a mistrial that is raised in this appeal.

The defendant testified in his own defense. He denied ever selling cocaine to Garrity and testified that when he approached the apartment building, he was not carrying a bag, but rather a bottle of rum and a flashlight. He also testified that Officer Phillips arrested him before he had an opportunity to go into the stairwell area.

Prior to trial, the judge granted the defendant's motion to sequester all witnesses. The judge exempted from this order, "one police officer in behalf of the Commonwealth." Therefore, throughout the trial Officer Phillips sat with the prosecutor at counsel table. The defendant objected to the officer's presence solely on the ground that it violated the sequestration order. During the impanelment, the judge also questioned the prospective jurors: "[W]ould you be more likely to believe a police

---

[1] The discussion regarding the defendant's motion for a mistrial occurred at side bar. There is no claim of error in the judge's denial of this motion.

officer simply because they [*sic*] were a police officer and for no other reason, or would you be willing to just give them the same degree of credibility you would any other person after you listened to the testimony that was provided?" The record reflects that no member of the venire responded that a witness's status as a police officer would affect his or her opinion as to credibility.

1. *The presence of a police witness at the prosecutor's table.* The defendant argues that since credibility was a key issue in the case,[2] the presence of Officer Phillips at the prosecutor's table throughout the trial created a substantial risk of a miscarriage of justice.[3] The underlying premise of the defendant's argument is that the prosecutor, by having Officer Phillips sit at counsel table throughout the trial, tacitly endorsed the officer's credibility. We conclude that no substantial risk of a miscarriage of justice was created by the officer's presence at counsel table.[4]

Officer Phillips's presence in the courtroom during the course of trial was permitted by the sequestration order, which was

---

[2] In her closing argument, the prosecutor stated that "[t]he most important issue in this case from the Commonwealth's point of view is credibility."

[3] At trial, the defendant objected to Officer Phillips's presence at the prosecutor's table solely on the ground that it violated the judge's sequestration order. On appeal, the defendant claims that the officer's presence was a "tacit endorsement" of his credibility. Since the defendant based his objection below on a ground different from that raised here our review is limited, as the defendant concedes, to whether the officer's presence at counsel table created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *DeWolfe*, 389 Mass. 120, 123-124 (1983); *Commonwealth* v. *Johnson*, 371 Mass. 862, 867 (1977); *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

[4] We note, however, that an assertion of personal opinion as to the credibility of a witness is prohibited by S.J.C. Rule 3:07, DR 7-106 (c) (4), as amended, 382 Mass. 787 (1981). *Commonwealth* v. *Smith*, 387 Mass. 900, 906 (1983). Such an assertion "is peculiarly unfortunate" when it has official backing. *Id*, quoting *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 547 (1971). We do not suggest that investigative officers, such as Officer Phillips in this case, must be excluded from the courtroom, or that a prosecutor cannot confer with such a witness. However, prosecutors should be mindful of the undesirability of endorsing a witness's credibility when deciding to have an essential witness sit at counsel table.

within the judge's discretion. We have recognized the essential role that investigating officers play in assisting with the prosecution of a particular case. See *Commonwealth* v. *Therrien*, 359 Mass. 500, 508 (1971) ("There is no error in such an exception from sequestration if the prospective witness, as the judge impliedly found, is essential to the management of the case"). See also *Commonwealth* v. *Pacheco*, 12 Mass. App. Ct. 109, 122 (1981); *Commonwealth* v. *Washburn*, 5 Mass. App. Ct. 195, 197-198 (1977); *Commonwealth* v. *Clark*, 3 Mass. App. Ct. 481, 485-486 (1975). In addition, through her questioning of prospective jurors, the judge sought to ensure that those members of the venire ultimately impaneled would not be influenced in their assessment of credibility by the mere fact that some of the witnesses would be police officers. Such an inquiry, while not constitutionally required, is certainly the more prudent approach when the case involves a "clash of credibility." *Commonwealth* v. *Sheline*, 391 Mass. 279, 291 (1984). See *Commonwealth* v. *Szczuka*, 391 Mass. 666, 671-672 (1984). Cf. *Commonwealth* v. *Nickerson*, 388 Mass. 246, 248-249 (1983). The judge also charged the jury that it was their job to determine the credibility of the witnesses, and that they "should make this determination without sympathy, without prejudice, without fear or favor for or against either side in this case."

Thus, considering the voir dire question, the judge's charge to the jury concerning the issue of credibility, and the implicit finding in the judge's exemption to the sequestration order, the officer's presence at counsel table did not create a substantial risk of a miscarriage of justice even in light of the clash between Officer Phillips's testimony and the defendant's testimony. The defendant cannot rest upon a bare allegation that this police officer had a "cloak of credibility" which was accentuated by his presence at counsel table as a sufficient basis to overturn his convictions. Cf. *Commonwealth* v. *Sheline, supra* at 291.

The defendant's reliance on *United States* v. *Anagnos*, 853 F.2d 1 (1st Cir. 1988), is misplaced.[5] In the *Anagnos* case,

---

[5] We note that on August 15, 1988, the Court of Appeals for the First Circuit, pursuant to rehearing en banc following recall of mandate, dismissed

the court found that the judge's denial of a requested voir dire on the issue whether jurors would give extra credibility to witnesses simply because they were police officers was compounded by allowing the key prosecution witness to sit at counsel table. *Id.* at 4. The court did not reach the question whether such a seating arrangement by itself was error, but nevertheless stated that "we would not regard it as plain error." *Id.* at 5. Although that court noted the general undesirability of such a practice (a view with which we concur), it recognized that the decision whether to allow such a seating arrangement must be within the trial judge's discretion. *Id.* at 4.

2. *The "mug shot" response.* The defendant's motion for a mistrial was based upon a reference by Officer Phillips to a "mug shot" photograph during cross-examination. The defendant did not move to strike the answer or request a curative instruction.[6]

Because of the potential prejudicial effect we have stated that prosecutors should avoid "references in testimony to the files from which [the photographs] were obtained." *Commonwealth* v. *Gerald*, 356 Mass. 386, 388 (1969). See *Commonwealth* v. *Barrett*, 386 Mass. 649, 652 (1982). If the defendant had elicited the potentially prejudicial response, "he cannot now complain of its prejudicial effect." *Commonwealth* v. *Elder*, 389 Mass. 743, 754 (1983), and cases cited. Cf. *Commonwealth* v. *Williams*, 379 Mass. 600, 606 (1980); *Commonwealth* v. *Gouveia*, 371 Mass. 566, 570 (1976). Although the objectionable reference to "mug shots" was not particularly responsive, when considering the context of the questioning and the type of questions being posed "it should have been apparent that continued interrogation . . . risked eliciting the very sort of answer the [officer] gave."[7] *Commonwealth* v.

_____

the appeal as moot. The court's judgment stated that, since the panel opinion has been vacated, it is "entirely without effect." Nevertheless, the reasoning of the panel opinion does not change our view. See *infra*.

[6] This failure may be because during the discussion concerning Garrity's description of the photographs as "the same picture, the side and the front" the judge indicated that to call the jury's attention to the answer through a curative instruction would give the response undue emphasis.

[7] Earlier, when Garrity described the defendant's photographs as being both a front and side view, the defendant raised his concern about the

*Hollyer*, 8 Mass. App. Ct. 428, 431 (1979). See *United States* v. *Cain*, 544 F.2d 1113, 1117 (1st Cir. 1976). In these circumstances, the judge did not err in denying the defendant's motion for a mistrial.[8] Cf. *Commonwealth* v. *Underwood*, 358 Mass. 506, 513-514 (1970).

*Judgments affirmed.*

witness using the phrase "mug shot." The prosecutor specifically cautioned Garrity not to refer to the photographs as mug shots in any of her responses. During the side bar discussion the prosecutor also noted that the defendant's questions risked eliciting such an answer.

Although Phillips was in the courtroom when the side bar discussion occurred, he was not privy to the conversation. Nor did the defendant attempt to prevent an objectionable response during his cross-examination of Phillips by requesting that the witness be cautioned privately about referring to the photographs as mug shots. See *United States* v. *Cain*, 544 F.2d 1113, 1117 (1st Cir. 1976).

[8] We note that "[t]he decision whether to declare a mistrial is within the judge's discretion." *Commonwealth* v. *Maldonado*, 389 Mass. 626, 629 (1983). *Commonwealth* v. *Early*, 349 Mass. 636, 637 (1965). Thus, our review is limited to whether it was an abuse of discretion for the judge to deny such a motion. *Commonwealth* v. *Maldonado, supra. Commonwealth* v. *Hoffer*, 375 Mass. 369, 373 (1978). Considering the fact that Phillips's remark was brief and isolated and given the substantial evidence of guilt presented by the Commonwealth, the judge did not abuse her discretion in denying the motion for a mistrial. See *Commonwealth* v. *Keevan*, 400 Mass. 557, 571 (1987) ("The trial judge was in the best position to evaluate the prejudicial impact of the indirectly inculpatory statement . . . and he was not required to declare a mistrial" [citations omitted]).