Heather A. ASHCRAFT,
Appellant–Plaintiff,

v.

NORTHEAST SULLIVAN COUNTY SCHOOL CORP., and Town & County Mutual Insurance Company, Appellees–Defendants.

No. 77A05–9712–CV–551.

Court of Appeals of Indiana.

March 11, 1999.

Brad Bough, Modesitt & Bough, Terre Haute, Indiana, Attorney for Appellant.

Mark D. Hassler, Hunt, Hassler & Lorenz, Terre Haute, Indiana, Michael J. Sacopulos, Sacopulos, Carter, Johnson & Sacopulos, Terre Haute, Indiana, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge

Appellant-plaintiff Heather A. Ashcraft ("Ashcraft") appeals from the trial court's order granting summary judgments in favor of appellee-defendant Northeast Sullivan County School Corp. ("the School") and appellee-defendant Town & County Mutual Insurance Company ("Town & Country"). The facts most favorable to the nonmovant are set forth below.

On June 12, 1993, Ashcraft, a member of the North Central (Sullivan) High School cheer squad, was participating in a fundraising event in the parking lot of Angell's Food Center ("Angell's") in Sullivan. Members of the squad offered to wash the car windows of shoppers parked in the parking lot, in exchange for a donation, which would be used to buy new cheer squad uniforms. Jeri Justice, the School's cheerleading coach ("Coach Justice"), was present at the fundraiser, ostensibly to organize and supervise the event.

Angell's is situated at the top of an incline, and its parking lot is in front of the store, also at the top of the incline. The cheer squad members were grouped at the bottom of the incline. There, Ashcraft approached a woman shopper, offered to wash her car windows, and upon the woman's assent, began to do so. While she was washing the rear windows of the car, she saw, out of the corner of her eye, a car approaching. She assumed the approaching car was being navigated to park in the empty parking space next to the car she was washing, and so she positioned herself close to the car she was washing in order to clear the path for the parking car. Unfortunately, the approaching car was in fact unattended, and struck the car Ashcraft was washing, pinning her in between the two cars and badly injuring her right leg.

The car, a 1973 Chrysler, belonged to Gerald Richardson ("Richardson"), who had purchased it approximately three weeks earlier. Neither at the time of purchase nor during the subsequent weeks had Richardson been told of or experienced any problems with the car's automatic transmission, nor had he experienced any problems or been advised of any problems with the car's braking mechanism. He had pulled into Angell's parking lot, parked the car on a slant, such that the rear end of the vehicle was lower than the front end, placed the vehicle in "park," turned it off, and taken the keys with him

into the store. Approximately five or ten minutes later, while in the store, Richardson was told of the accident in the parking lot; he went outside and found that his vehicle had rolled backwards out of the spot where he had left it and into Ashcraft and the vehicle she was washing. He saw that approximately four men were pushing the car back to its original parking spot; however, when police officers who came to the scene checked the car after the accident, the transmission selector was in "park."

Ashcraft brought a negligence suit against Richardson and the School, alleging negligence on Richardson's part, as well as negligence on the part of the School for its failure to properly supervise and maintain the safety of the students during the fundraiser. Her action against Town & Country was initiated to recover under the underinsured motorist provision of Ashcraft's own insurance policy; Ashcraft also alleged Town & Country acted in bad faith by deliberately refusing to pay her claim.[1] Richardson was dismissed with prejudice after he and Ashcraft entered into a compromised settlement of claims. Mediation between the remaining parties was held on December 6, 1996, but did not result in settlement. After a hearing, the Sullivan Circuit Court granted both defendants' motions for summary judgment, and Ashcraft appeals.

■ When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Goldsberry v. Grubbs*, 672 N.E.2d 475, 477 (Ind.Ct.App. 1996). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C); *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Crist v. K–Mart Corp.*, 653 N.E.2d 140, 142 (Ind.Ct.App.1995), *trans. denied* (1996).

■ Ashcraft's claim against the School sounds in negligence, a tort consisting of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately caused by that breach. *Wickey*, 642 N.E.2d at 265 (Ind.Ct.App.1994), *trans. denied; Bradtmiller v. Hughes Properties, Inc.*, 693 N.E.2d 85, 86 (Ind.Ct.App. 1998), *reh'g denied.* The existence of a duty is a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.* To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Goldsberry*, 672 N.E.2d at 477 (citing *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995), *trans. denied* (1996)). Regardless of which element or elements the defendant argues is negated, the goal of the analysis is to establish parameters for deciding as a legal matter which cases will survive in the system and which cases will perish. *Id.* While summary judgment is rarely appropriate in a negligence action, summary judgment may be suitable to determine the legal question of whether a duty exists. *Wickey*, 642 N.E.2d at 265.

The question of whether Justice and/or the School owed a duty of reasonable care to Ashcraft was the focus of much of the School's argument against liability at the summary judgment stage of the proceedings below. The School argues, correctly, that absent the finding of a duty, there can be no breach, and thus no recovery under the theory of negligence. *Haun v. Padgett*, 598 N.E.2d 630, 632 (Ind.Ct.App.1992) (*citing Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992)). The School also argues that in *Webb v. Jarvis*, the Indiana Supreme Court has identified the following three factors that a court balances when determining whether to impose a duty at common law: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the per-

---

1. The trial court granted partial summary judgment in favor of Town & Country as to Ashcraft's claim of bad faith, and Ashcraft did not contest that judgment; thus, the issue of Town & Country's bad faith *vel non* is not before us on appeal.

son injured; and (3) public policy concerns (575 N.E.2d at 995), and that when this balancing is undertaken in Ashcraft's case, it leads to the conclusion that, as a matter of law, the School and its employee Justice did not owe Ashcraft any duty of care. Likewise, on appeal, the School advances arguments such as, "the School does not owe its high school students a duty to 'insure' their safety and well being when they are engaged in a fund raiser," and that as a licensed driver who has completed a drivers education course, Ashcraft "incur[red] the risk of the known danger that a vehicle parked on an incline may roll down from the same."

 This particular line of reasoning is not persuasive, because, as Ashcraft correctly asserts, even in negligence cases where summary judgments in favor of school corporations have been affirmed, Indiana has clearly recognized that there exists a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority. *Beckett v. Clinton Prairie School Corp.*, 504 N.E.2d 552, 553 (Ind.1987); *Norman v. Turkey Run Community School Corp.*, 274 Ind. 310, 315–16, 411 N.E.2d 614, 616–17 (Ind.1980), *reh'g denied; Miller v. Griesel*, 261 Ind. 604, 612, 308 N.E.2d 701, 706 (Ind.1974), *reh'g denied.* It is not disputed that at the time of the accident, Ashcraft was a student of the School, Justice was School personnel, and they were engaged in a School function. "[T]he common law of this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under this authority." *Miller*, 261 Ind. at 612, 308 N.E.2d at 706.

It would be a radical departure from relevant supreme court precedent to engage in a *Webb v. Jarvis* analysis and hold that the School owed Ashcraft no duty of care at all. As our court's Judge Rucker has noted,

[e]ssentially, where relevant case authority dictates the existence of a duty then we may not, by examining the relationship between the parties, foreseeability of harm, and public policy concerns, reach a contrary conclusion and determine that no duty exists. In short, balancing the *Webb* competing factors is reserved for instances

where the existence of a duty has not been previously determined or articulated.

*Ellis v. Luxbury Hotels, Inc.*, 666 N.E.2d 1262, 1268 (Ind.Ct.App.1996) (Rucker, J., concurring). We find that the School, and its representative Justice, owed a duty to take reasonable measures for the safety of the students participating in the fundraiser. However, the resolution of the duty issue does not end our inquiry.

The standard of care imposed by Indiana courts in cases involving an alleged breach of a school's duty toward its students is that level of care that an ordinary prudent person would exercise under the circumstances. *Norman*, 411 N.E.2d at 616–17. Ashcraft argues that Justice breached the School's duty of reasonable care by failing to block off an area in the parking lot within which the fundraising activity (window washing) could be safely conducted, by failing to post signs to alert others to the presence of students in the lot, and by failing to caution the cheer squad members as to the danger of being struck.

We acknowledge that our court has held that summary judgment is especially inappropriate where the critical question for resolution is whether a defendant exercised the requisite degree of care under the factual circumstances. *Randolph Co. Hospital v. Livingston*, 650 N.E.2d 1215, 1217 (Ind.Ct. App.1995), *reh'g denied.* The Second Restatement of Torts counsels:

> In an action for negligence the court determines
>
> \* \* \*
>
> (c) the standard of conduct required of the defendant by his legal duty;
>
> (d) whether the defendant has conformed to that standard, *in any case in which the jury may not reasonably come to a different conclusion;* . . . .

Restatement, Second, Torts § 328 B (1965), *emphasis added.* Accordingly, as noted above, it is possible to prevail on a motion for summary judgment by establishing that undisputed material facts negate at least one element of the plaintiff's claim. *Goldsberry*, 672 N.E.2d at 477 (Ind.Ct.App.1996) (citing *Colen v. Pride Vending Serv.*, 654 N.E.2d

1159, 1162 (Ind.Ct.App.1995), *trans. denied* (1996)). We find that undisputed material facts negate at least one, if not two elements of Ashcraft's negligence claim.

■ We are guided by the aforementioned Indiana Supreme Court decision in *Norman*, which involved a negligence claim against a school brought on behalf of a seven-year-old second grade student who was injured when she collided with a six-year-old first grade student during recess on the school's playground. In addition to standing for the proposition, cited above, that the State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority, the case also nonetheless affirmed the trial court's entry of summary judgment in favor of the school. The Court of Appeals had ruled that the evidence presented inferences that two of the several teachers assigned to watch the children at the recess period "were inattentive either in failing to observe the students or in failing to warn them after they observed the dangerous situation developing." 411 N.E.2d at 617. The Supreme Court, however, reasoned that since the children were not engaged in an activity that presented a dangerous or unusual condition,

> under no set of facts presented to the jury could it be said that a duty arose on any of the teachers or all of them to pay particular attention to a particular student who was running.... *Even perfect attention to this incident might not have prevented it.* To hold the school personnel liable under the set of facts presented here would require them to be insurers of the safety of children in their care....

411 N.E.2d at 618 (emphasis added). Similarly, we find that under no set of facts presented to a jury could it be said that Justice breached her duty of reasonable care by not paying perfect attention to Ashcraft at all times; no interpretation of the facts gives rise to the inference that had Justice supervised the fundraiser differently, Richardson's car would not have rolled down the incline and struck Ashcraft.

■ Accordingly, we are brought to a discussion of the third element of any negligence action, that of proximate cause. If it is assumed, *arguendo*, that Justice breached the School's duty of reasonable care, Ashcraft must still prove that her injury was proximately caused by that breach. "A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances." *Fast · Eddie's v. Hall*, 688 N.E.2d 1270, 1274 (Ind.Ct.App.1997), *reh'g denied*. "A fundamental element of proximate cause is that the injury or consequence of the wrongful act is reasonably foreseeable at the time of the act." *Sharp v. Town of Highland*, 665 N.E.2d 610, 617–18 (Ind.Ct. App.1996), *trans. denied*, 683 N.E.2d 580, (citing *Lever Brothers Co. v. Langdoc*, 655 N.E.2d 577, 584 (Ind.Ct.App.1995)). Fundamentally, Ashcraft's argument is that Justice should have foreseen a series of events that were as a matter of law unforeseeable. It is true, as Ashcraft points out, that to find one's actions to have a foreseeable consequence does not require a showing that a reasonable person would have predicted events to occur exactly the way that they did. "A general principle of negligence law is that the actor need not foresee the exact manner in which the harm occurs but must, in a general way, foresee the injurious consequences of his act or omission." *Frye v. American Painting Co.*, 642 N.E.2d 995, 998 (Ind.Ct.App.1994). However, "[t]he determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of men." *Id.* Moreover, to be considered a proximate cause, a negligent act must have set in motion a chain of circumstances which in natural and continuous sequence lead to the resulting injury. *Straley v. Kimberly*, 687 N.E.2d 360, 364 (Ind.Ct.App.1997), *reh'g denied* (1998). Finally, although proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Fast Eddie's*, 688 N.E.2d at 1274 (*citing Rogers v. Grunden*, 589 N.E.2d 248, 257 (Ind.Ct. App.1992), *trans. denied.*)

■ Accordingly, while we acknowledge that the exact manner in which an injury occurred is not dispositive of its foreseeabil-

ity, we cannot agree with Ashcraft's general assertions, such as, "that cars on the lot, . . ., might pose a danger to the girls without basic precautionary measures being taken and absent the close supervision of a school official, is foreseeable," (Appellant's Brief, at 20–21), and "[w]ithout posting signs or otherwise making [drivers in the lot] aware of the students present, the girls were subject to being harmed by an automobile." *Id.* The girls, including Ashcraft, were subject to being harmed by an automobile every day, whether they were at their high school to attend a cheer squad practice, or at a grocery such as Angell's, with their parents or having driven themselves there. Ashcraft has failed to make the causal link between Justice's alleged negligence in not making signs or "blocking off" an area and Richardson's parking his car where he did, and its subsequent unexplained rolling into Ashcraft, which is clearly and undisputedly the cause in fact of her injury. We find a jury could not reasonably come to a different conclusion as to the proximate and actual cause of Ashcraft's injury, and so the summary judgment in favor of the School is affirmed.

We turn now to the issue of the appropriateness of summary judgment in favor of Appellee Town & Country. Whether Town & Country can be held liable for Ashcraft's injury depends upon whether Richardson, as an underinsured motorist, was negligent.

We have set forth and discussed at some length above the elements of the tort of negligence, as well as the axiom that absent the finding of a duty, there can be no breach, and thus no recovery under the theory of negligence. *Hawn v. Padgett,* 598 N.E.2d 630, 632 (Ind.Ct.App.1992) (citing *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind. 1992)).

Arguing that Richardson, as the operator of a motor vehicle, owed a general, common law duty "to all foreseeable victims that may be harmed by the operation of his vehicle," Ashcraft points to ˙ Ind.Code § 9–19–3–1, which provides that all motor vehicles (other than motorcycles) must be equipped with two separate brake mechanisms, "so that failure of one (1) part of the operating mechanism does not leave the motor vehicle without brakes on at least two wheels." Her argument is that although Richardson was in

compliance with the statute insofar as his car *had* an emergency hand brake, there is a fact question as to whether his opting not to set the hand brake in this instance constituted a breach of his general duty of care. Town & Country argues that Indiana does not recognize a driver's duty to set his emergency brake each time he parks his vehicle, and that we should not establish such a duty as a matter of law.

■ As noted above, the existence of a duty is a question of law for the court to determine. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied.* We· do not need to reach the question of whether Ind.Code § 9–19–3–1 "creates" a specific duty as relates to parking one's vehicle, although we are doubtful that it does; nor are we, as Town & Country cautions against, establishing that a driver owes a duty to set his emergency brake each time he parks his vehicle. We simply hold a driver parking on an incline does owe a duty to park safely, *i.e.,* to take whatever measures a reasonably prudent person would take to ensure that the car, once parked and left unattended, does not roll down that incline. The remaining questions in this case—whether Richardson breached that duty, and if so, whether that breach proximately caused Ashcraft's injury—are best resolved by a trier of fact. We reiterate our earlier acknowledgment that our court has held summary judgment to be especially inappropriate where the critical question for resolution is whether a defendant exercised the requisite degree of care under the factual circumstances. *Randolph Co. Hospital v. Livingston,* 650 N.E.2d 1215, 1217 (Ind.Ct.App.1995), *trans. denied.* Accordingly, we remand Ashcraft's action against Town & Country for further proceedings to determine whether Richardson was negligent in parking his vehicle on an incline without setting his emergency hand brake.

Affirmed in part, reversed in part and remanded.

SHARPNACK, C.J., and SULLIVAN, J., concur.